# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCUS JONES, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 18-491 |
| SHERIFF JEWELL WILLIAMS, et al. | : | |
| | : | |
| Defendant. | : | |

**Mitchell S. Goldberg, J.**                                                         **February 25, 2019**

## MEMORANDUM

Plaintiff Marcus Jones, acting *pro se*, brings this civil rights action against Defendants City of Philadelphia, Sheriff Jewell Williams, Deborah McGee, RN, and two John Doe Defendants alleging (1) that he suffered injuries caused during his transport by the Defendant Sheriffs and (2) that a prison nurse subsequently exhibited indifference to his injuries. Defendants have moved to dismiss the Amended Complaint for failure to state a claim. For the following reasons, I will deny the Motion by Defendants Sheriff Jewell Williams and the City of Philadelphia, and grant the Motion by Defendant Deborah McGee.

## I. FACTUAL BACKGROUND

The Amended Complaint sets forth the following facts: [1]

---

[1] When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). In accordance with this principle, my recitation of the facts assumes the truth of the factual statements in the Amended Complaint.

On September 8, 2017, Plaintiff was being transported in a "Sheriff's bus." Sheriff John Doe #1 had handcuffed Plaintiff's right hand to another inmate's right hand, leaving Plaintiff unable to balance or brace himself. In addition, the bus had no seat belts. (Am. Compl. pp. 2–3.)

Sheriff John Doe #1 then began driving the bus and hit another moving vehicle, which caused a "turbulence" that resulted in Plaintiff being injured. After Plaintiff was treated at the emergency room of the hospital, Sheriff John Doe #2 arrived with a police van and "packed" Plaintiff and ten other inmates in a van, where they sat for three to four hours in the heat with little water. (Am. Compl. p. 3.)

Subsequently, Plaintiff used sick call slips to inform Defendant McGee, a registered nurse at the prison, that he was still hurt. McGee told Plaintiff to wait a month for help and "showed indifference" to his injuries. She also told him to "buy sick call off commissary." Plaintiff claims that he continued to suffer pain. (Id.)

Plaintiff alleges that the policy for handcuffing inmates and not having seatbelts—promulgated by the head sheriff, Defendant Jewell Williams—is the major reason for his injuries. (Id.)

Plaintiff filed suit on February 13, 2018 and submitted his Amended Complaint on March 5, 2018, bringing claims against Defendants City of Philadelphia ("City"), Sheriff Jewell Williams, Deborah McGee, RN, and two John Doe Defendants. The City and Williams filed a Motion to Dismiss on August 10, 2018, and McGee filed a Motion to Dismiss on August 16, 2018. Plaintiff has responded to both Motions.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979) (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet

there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## III. DISCUSSION

### A. Claims Against Defendant Williams

Plaintiff alleges, in part, that the Sheriff's Department policy for handcuffing inmates and not having seatbelts—a policy promulgated by the head sheriff, Defendant Jewell Williams—is the major reason for his injuries. (Am. Compl., p. 3.) Williams moves to dismiss this claim, arguing that Plaintiff fails to state a § 1983 claim against him.

The mere fact, without more, that a defendant holds a supervisory position is insufficient to prove a cause of action because § 1983 does not support civil rights claims based upon a theory of *respondeat superior*. Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Rather, § 1983 liability against a state official in his individual capacity must be premised on one of two theories. First, an individual supervisor may be liable on grounds of personal involvement. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.")). "Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence. Rode, 845 F.2d at 1207; see also C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights

4

case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). Such allegations "must be made with appropriate particularity," meaning that a plain allegation that a defendant had responsibility for supervising other defendants is insufficient. Rode, 845 F.2d at 1207.

Alternatively, "individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). "A policymaker is an official with 'final, unreviewable discretion to make a decision or take an action.'" Gelpi v. City of Phila., 183 F. Supp. 3d 684, 689 (E.D. Pa. 2016) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1481 (3d Cir. 1990)).

Plaintiff fails to set forth any factual allegations to support the first theory of liability against Defendant Williams. Plaintiff has not pled any personal involvement by Defendant Williams in the alleged wrongs. Nor does the Amended Complaint contain any allegations that Williams either personally handcuffed Plaintiff or specifically directed that the John Doe Defendants handcuff Plaintiff in the manner described.

Plaintiff has, however, plausibly alleged a section 1983 claim against Defendant Williams under the second theory of liability.[2] Plaintiff asserts that "Sheriff Jewell Williams the head sheriff in Philadelphia['s] policy for handcuffing inmates and not having seatbelts on the prison bus is a major reason for my injuries." (Am. Compl., p. 3.) The existence of such a policy could provide a basis for § 1983 liability. See Stewart v. Wenerowicz, No. 12-4046, 2015 WL 5092865, at *10

---

[2] Notably, Defendants' Motion does not address the second theory of liability.

5

(E.D. Pa. Aug. 27, 2015) (declining to dismiss supervisory liability claim that supervisors at correctional facility failed to adopt or enforce policies to ensure the safe transportation of prisoners in DOC buses, including provision of seatbelts).

Moreover, although Plaintiff does not explicitly plead that Williams is a policymaker, he alleges that Williams is the "head sheriff," which plausibly suggests that Williams may be responsible for developing or implementing Sheriff's Department policies, including transportation policies. See Hojnowski v. Berks Cnty., No. 13-5618, 2016 WL 725250, at *8 (E.D. Pa. Feb. 23, 2016) (noting that the head sheriff could be found responsible for policies regarding transportation of arrestees, which govern the Sheriff's Department); Morgan v. Rossi, No. 96-1536, 1998 WL 175604, at *11–12 (E.D. Pa. April 15, 1998) (concluding county sheriff was acting as final policymaker for the county).

Liberally reading the allegations of the Amended Complaint in the light most favorable to Plaintiff, I find that he has adequately alleged a § 1983 claim against Defendant Williams.

### B. Claims Against City of Philadelphia

In order to recover against a municipality under § 1983, a plaintiff must plead that the City itself caused an injury through the implementation of a policy, practice or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering

> his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted). Plaintiffs must prove that the action in question conducted pursuant to official municipal policy caused their injury. Connick v. Thompson, 563 U.S. 51, 60–61 (2011).

Here, Plaintiff brings a claim against the City of Philadelphia presumably on the basis of policy established by Defendant Williams for not providing seat belts on prison busses and requiring that prisoners be handcuffed. Plaintiff has plausibly pled that Williams has final policy-making authority as the Sheriff for the City of Philadelphia, thereby allowing his actions to bind the City for his conduct. Moreover, Plaintiff has alleged that the actions of the Joe Doe Defendants were taken pursuant to the official policy and those actions directly caused his injuries. Accordingly, dismissal of the Monell claim is not appropriate at this early stage of the litigation.

### C. Claims Against Defendant McGee

Finally, Plaintiff brings a claim against Defendant McGee alleging "medical indifference."

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103–105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Id. at 104; see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

The "seriousness" prong requires a plaintiff to demonstrate that the need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456,

458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)); see also Pearson v. Prison Health Servs., 850 F.3d 526, 534 (3d Cir. 2017) (noting that a medical need is serious where it has been diagnosed by a physician as requiring treatment). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Lanzaro, 834 F.2d at 347.

The "deliberate indifference" calls for a showing that the defendants were more than merely negligent in diagnosing or treating a serious medical condition. Mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment. White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990). Rather, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The United States Court of Appeals for the Third Circuit has found that the deliberate indifference standard is satisfied:

> [W]hen prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment.

Whooten v. Bussanich, 248 F. App'x 324, 326–27 (3d Cir. 2007). Beyond these types of circumstances, a court will generally not "second-guess the propriety or adequacy of a particular course of treatment . . . [since such determinations] remain[] a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754 762 (3d Cir. 1979) (quotations omitted).

Plaintiff fails to set forth a plausible claim for relief. Plaintiff has not alleged facts upon which I can infer that he had a "serious" medical condition that either had been diagnosed by a physician as requiring treatment or was so obvious that a lay person would have easily recognized the necessity for a doctor's attention. Nor has he alleged that delay in treatment caused him to suffer a life-long handicap or permanent loss.

Plaintiff has also not adequately pled that Defendant McGee acted with deliberate indifference. According to the Amended Complaint, Plaintiff had just received medical care for his injuries at the hospital. When he put in a sick call to McGee, she told him to wait a month for further treatment. The Amended Complaint does not suggest that McGee's decision to delay treatment was based on non-medical reasons rather than on an informed medical judgment. Nor does Plaintiff set forth any facts to suggest that McGee knew Plaintiff faced a substantial risk of serious harm, yet failed to take reasonable steps to avoid the harm. Absent such allegations, the claims against McGee must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss by Defendants Williams and the City of Philadelphia will be denied and the Motion to Dismiss by Defendant McGee will be granted. As a general rule, in civil rights cases, *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, Plaintiff will have thirty days from the date of this Order to file a second amended complaint curing any deficiencies identified in this Memorandum.

An appropriate Order follows.